## In re BRUCE SEWING MACH. CO.
### No. 3912.

District Court, S. D. Illinois, S. D.
June 20, 1930.

R. N. McConnell, of Chicago, Ill., for trustee.

Brown, Hay & Stephens, of Springfield, Ill., for creditors asking for review.

FITZHENRY, District Judge.

The questions submitted by the certificate for review might all be included in one proposition: Did the referee err in making the statutory allowances to himself and the trustee and an allowance for an attorney's fee to the trustee, in the light of the circumstances shown by the record?

In answer to the rule to show cause, the First State Trust & Savings Bank said it had filed its bill in the circuit court of Sangamon county, Ill., to foreclose its said mortgage and thereafter it was restrained by the order of the United States District Court for this district from further proceeding in said foreclosure suit and the said suit was still pending. In other words, prior to the institution of the proceedings to sell real estate in this case, the mortgagee had elected to pursue its remedy in the state court and had filed its bill. Upon the order to show cause, it gave a limited consent to sell the real estate in question, free and clear of the lien of the mortgage, "provided, that if said real estate failed to bring a sum in excess of the amount of defendant's debt, interest and costs as aforesaid, this defendant be permitted to purchase said real estate at said sale for the amount of said debt, interest and costs, surrendering its lien thereon in payment of the purchase price, and provided further that in event said real estate shall sell for more than sufficient to pay the debts, interest and costs due this defendant as aforesaid, the lien of the defendant's mortgage shall be and become a first and prior lien upon the proceeds of such sale."

The referee's order discloses there was reasonable cause to believe that there was an equity in the mortgaged premises, the value of which was one of the assets of the bankruptcy estate, so that there can be no question but that the bankruptcy court had jurisdiction in the premises.

Section 67d of the Bankruptcy Act (11 USCA § 107 (d) provides that properly recorded and valid liens shall not be "affected by this Act." Would the taxing of fees against a fund created by the sale of property subject to such a valid lien, where there is no general fund, violate this provision?

Under section 48 of the act (11 USCA § 76), the trustee is entitled to receive a commission on "all moneys disbursed or turned over to any person, including lien holders." By section 40 (11 USCA § 68), governing referees' fees, it is provided that he shall have one per cent. commission on all moneys "disbursed" to creditors of the estate. The purpose of bankruptcy proceedings is to collect, marshal, administer, and distribute the assets of bankrupts and to determine priorities of

the parties where those questions arise. This power to marshal liens and determine their validity and priority implies the power to require, upon due notice, lienholders to set up their alleged liens within a stated reasonable time, or forever be barred from asserting the same. Remington, § 2742½. However, in exercising these very vital powers the burden is upon the officers of the court to always keep in mind the provisions of section 67d, 11 US CA § 107 (d), which plainly lays down the mandate that such liens shall not be "affected by this Act."

Congress vested in bankruptcy courts the power and duty of marshaling and distributing assets for the exclusive benefit of general creditors. Under the Bankruptcy Law the proceedings relative to liens is necessarily inquisitorial, for the purpose of determining: (1) Whether the lien is a bona fide one; (2) the exact amount due and owing to the lienor; and (3) the fund over and above a sufficient amount to cover the valid liens, for the benefit of the general creditors.

The rule applicable to a case where, in the sale of mortgaged property, the proceeds of the sale produce nothing for the benefit of general creditors, was early laid down in this, the Seventh Circuit, by the Circuit Court of Appeals, in Re Utt, 105 F. 754, 755, in a case which went up from this court. The holding of the court is well digested in the syllabus: "On petition of the trustee the court ordered the first mortgage paid from the proceeds, but displaced the second in favor of the costs and expenses incurred in both the bankruptcy proceedings and the injunction suit, including fees allowed to counsel for the creditors and trustee. No other assets of the bankrupt came into the hands of the trustee. Held, that such order was erroneous, except in so far as it directed payment of the costs incurred in selling the property, including compensation to the trustee not exceeding that to which the master in the state court would have been entitled."

The opinion in Re Utt, supra, was handed down prior to the amendment to the Bankruptcy Act of June 25, 1910, and this same question was discussed by the Circuit Court of Appeals of the Fifth Circuit in Gugel v. New Orleans National Bank, 239 F. 676, 678, in the light of the amendments to sections 40, 48 and 67d (11 USCA §§ 68, 76, 107 (d). In discussing the amendment to section 48, covering trustee's commissions and attorneys' fees, it was said:

"The contention of the trustee is that,

whatever may have been the law before the amendment of June 25, 1910, to the Bankruptcy Act, as to the right of the trustee to commissions and attorney's fees to be paid out of the funds realized from the sale of the mortgaged property, though the funds were insufficient to satisfy the mortgage liens on it, the matter is set at rest by that amendment, which provides that trustees shall receive commissions on all moneys disbursed or turned over to any person, including lienholders. If the reference in the added words is to the *source* of payment, the language is undoubtedly broad enough to include payment at the expense of the lienholder. However, there seem to be two possible constructions that may be given to the language—one, that it relates to the basis of computation of the commission, and has no reference to the source from which payment is to be made; and the other, that it has reference to the source of payment as well. There is nothing in the language of the amendment that would force the latter construction. It is necessary, therefore, to look beyond the language to the purpose to be subserved and the results that follow from the respective constructions, in order to reach a conclusion.

"The purpose of Congress was evidently to increase the compensation of the trustee, but not necessarily at the expense of lienholders and with the effect of displacing their liens. Section 67d forbids such a construction. The purpose to increase is worked out by enlarging the basis of computation, so as to include amounts paid or turned over to lienholders, upon which, before the amendment, commissions were not, in many districts, computed, even where the payments of commissions, when so computed, were to be made out of the fund going to unsecured creditors. There was, therefore, a field of operation for the amendment without attributing to it the effect to displace liens and mortgages. To give it this broader construction would have the effect of imposing on the lienholder the burden of the expense of the general administration of the bankrupt estate, in which he has no interest and from which he derives no benefit. We cannot think that Congress intended any such inequitable result. Imposing upon the lienholder the burden of the cost of the general administration of an insolvent estate, when he has ample security for his debt, is a denial of an adequate remedy for the collection of the debt secured by the lien. Certainly a construction involving such a result would not be adopted by the court, unless the language of the amendment forced it.

"The language of the amendment being susceptible of the two constructions, we do not hesitate to attribute to it that which works out the more reasonable results, viz. that it was intended to furnish an enlarged basis for the computation of the trustee's commissions, but was not intended to affect the source of payment, so as to displace liens in violation of the provisions of section 67d, as amended and re-enacted in 1910 [11 USCA § 107 (d)]. The case of In re Breakwater Co. (D. C.) 220 F. 226, is not in conflict with our conclusion. In that case there was a fund going to unsecured creditors, out of which the commissions based on the amount disbursed to lienholders were to be paid. The objection to the allowance of the commissions did not come from a lienholder, but from an unsecured creditor of the bankrupt."

The Circuit Court of Appeals for the Seventh Circuit, in Re Utt, supra, discussed the right of referees and trustees in bankruptcy to commissions under sections 40 and 48 prior to the amendment, holding that: "They are not entitled to commissions on sums paid to mortgagees from the proceeds of the mortgaged property on its sale by order of the court of bankruptcy, such sums not being dividends, within the meaning of the statute." In that case it must be kept in mind there was no estate for the general creditors.

The Circuit Court of Appeals for the Fifth Circuit had occasion to refer to the Gugel Case, supra, in a recent case, Lerner Stores Corp. v. Electric Maid Bake Shops et al., 24 F. (2d) 780, 781. That court held upon the authority of the Gugel Case, supra, that: "The trustee is not obliged to administer property burdened with a valid lien. If it appears in the exercise of sound and honest discretion that there is a substantial equity for the general creditors, it is his duty to do so, but in that event the lien creditor loses none of his rights."

The general rule with regard to the expenses of foreclosure and administration in bankruptcy is to pay such expenses out of the general estate, if there is one, rather than out of the fund derived from the sale of mortgaged or lien property. Virginia Securities Corp. v. Patrick Orchards (C. C. A.) 20 F. (2d) 78, 79–81. Where there is no general fund, it has become established that the lien fund is liable for no costs except such as would have been incurred had the mortgage or lien been foreclosed in the state court.

In this case there is no general fund. The bank had instituted a foreclosure suit in the circuit court of Sangamon county, but its further prosecution was prevented by the injunction of this court, procured upon the application of the trustee. After the restraining order had been issued and served and the proceedings stopped, the trustee filed his petition with the referee, asking for a rule upon the bank to show cause why the property should not be sold, free and clear. Respondent answered. It asserted its rights in the premises and at the conclusion consented to the sale by the trustee, upon condition, if the real estate shall not bring a sum in excess of defendant's debt, interest, and costs, "this defendant be permitted to purchase said real estate at said sale for the amount of said debt, interest and costs, surrendering its lien in payment of the purchase price." In effect, the bank said, it did not believe the trustee in bankruptcy had any interest in the property, but, if he thought he could get something out of it over and above what was due the bank, the interest and costs, he was at liberty to do so at his own hazard. It stood squarely upon its legal rights within the provisions of section 67d of the Bankruptcy Act and assumed no additional obligation.

Under these circumstances the only deductions that can be made from the purchase price are the costs which would have accrued in foreclosing the mortgage in the circuit court of Sangamon county. Had the bank abandoned the remedy which it had selected, and sought the foreclosure of its mortgage through the proceedings in bankruptcy to sell the mortgaged property, free and clear of all incumbrances, or if the proceeding was entirely for the benefit of the bank, then a different situation might have been created. But, where the holder of a valid lien upon real estate owned by the bankrupt is forced to permit his security to be sold, free and clear of all incumbrances, the fund so created may not be diminished by the costs of administration in a bankruptcy proceeding. To hold otherwise would nullify the security granted by Congress in the enactment of the Bankruptcy Law, to the holders of valid liens upon the property of persons who become insolvent.

We, therefore, conclude that all of the questions submitted, 1 to 6, inclusive, must be answered in the affirmative.

That is, construing the words "cost of proceedings," in question 1, to mean, cost of administration of the bankruptcy proceedings. All costs and expenses incident to the sale of the real estate in question, such as would have been taxed had the foreclosure

proceeding in the circuit court of Sangamon county not been enjoined, may be taxed and collected from the fund, together with such fees to the trustee as would have been allowed to the master in chancery, had he made the sale.

It is therefore ordered that this cause be remanded to the referee for further proceedings in harmony with the views herein expressed.