In the Matter of **ORBITRONICS, INC.,** a Wisconsin corporation, Bankrupt.
No. 62–B–2270.

United States District Court
E. D. Wisconsin.
June 2, 1966.

David Shute, Milwaukee, Wis., for Mercantile Financial Corp.

John Wittig, Milwaukee, Wis., for Frank Verbest, trustee in bankruptcy for Orbitronics, Inc.

## OPINION AND ORDER

REYNOLDS, District Judge.

This is a petition by Mercantile Financial Corporation (hereinafter referred to as "Mercantile"), a secured creditor of Orbitronics, Inc., a bankrupt Wisconsin corporation, to review certain portions of the referee in bankruptcy's order concerning (1) the amount of the Trustee's fee allowed by the Referee for the conduct of an auction sale, and (2) the payment out of the proceeds of sale of the sum provided under Section 40 of the Bankruptcy Act for the referees' salary and expense fund.

Orbitronics was adjudicated a bankrupt on May 22, 1964, after unsuccessful attempts to confirm an arrangement with creditors under Chapter XI of the Bankruptcy Act, and Frank C. Verbest was appointed as Receiver. On June 9, 1964, Frank C. Verbest was appointed Trustee with authority to operate the business of the bankrupt subject to certain restrictions on the use of inventory without the consent of Mercantile.

Mercantile filed a reclamation petition on June 11, 1964. This petition set forth claims for an amount in excess of $138,-000 as the unpaid balance of advances made to Orbitronics as debtor-in-possession, and also to the receiver, which advances allegedly had been incurred and secured pursuant to orders of the bankruptcy court. Mercantile's claim also included an amount in excess of $900,000 remaining on the indebtedness which had been outstanding at the commencement of the Chapter XI proceeding. The petition requested that the Court direct the Trustee to turn over to Mercantile all physical assets covered by Mercantile's chattel mortgages, all accounts receivable, all inventory, and all cash then on deposit with the bankruptcy court and/or held by the Trustee.

In response to such petition, counsel for the Trustee filed a motion to dismiss on the ground, among others, that the relief requested could not be granted because Mercantile's lien claims are junior to various administration claims of the Chapter XI proceeding and the bankruptcy proceeding. A decision has not yet been made on Mercantile's petition, and this aspect of the case is not directly before the court at the present time.

On August 25, 1964, Mercantile filed a petition for (1) an order directing the Trustee to sell all the physical assets and property of Orbitronics, (2) an order directing that the proceeds be held subject to the lien rights of Mercantile (Mercantile, it is important to note, possessed a lien upon all the assets involved in its petition for sale), and (3) an order allowing reasonable expenses incurred in connection with such sale including a reasonable fee for the Trustee and counsel for the Trustee.

On September 9, 1964, an order was entered directing the sale of the physical assets of Orbitronics in accordance with the relief requested in the petition of Mercantile and pursuant to the provisions of the Bankruptcy Act. Such sale was held and later confirmed by the Court on October 20, 1964. The net proceeds were $428,308.42. In connection with such sale, various petitions for reclamation and for restraining orders were filed by creditors and third parties which required the attention of the Trustee and his counsel and hearings by the bankruptcy court.

In the decision presently under review, the Referee found that Mercantile, in order to induce the Trustee to proceed with the sale of said assets, agreed in writing that it would not object to the payment out of the proceeds of such sale of such reasonable fees for the Trustee and his counsel as the bankruptcy court might fix as related to the sale of such assets.

The issues presently before this court are:

I. Is the sum of $8,566.17 awarded to the Trustee by the Referee an unreasonable amount of compensation for his services in connection with the sale of Orbitronic's assets under all the facts of this case?

II. Are fees for the referees' salary and expense fund to be charged against proceeds of the sale of mortgaged property where the mortgagee not only consented to the sale but petitioned the court for an order directing the Trustee to sell?

These issues will be discussed separately below.

## I. THE TRUSTEE'S FEE

[■] The fees and allowances of trustees in bankruptcy and their counsel are allowable only as authorized by the Bankruptcy Act. In re Friedman, 232 F.2d 151 (2d Cir. 1956), cert. denied Klein v. Brandt & Brandt Printers, Inc., 352 U.S. 835, 77 S.Ct. 53, 1 L.Ed.2d 54 (1956). The act fixes a ceiling upon such fees and allowances. In re Portage Wholesale Co., 216 F.2d 614 (7th Cir. 1954). The particular amount awarded a given trustee lies within the broad discretion of the referee so long as it does not exceed the statutory ceiling. A district court reviewing a decision of a referee must accept the referee's findings of fact unless they are clearly erroneous. General Order 47 11 U.S.C.A. following § 53.

■ The Referee in this case found as a matter of fact that Mercantile "agreed, in writing, that it would not object to the payment out of the proceeds of such sale of such reasonable fees for the Trustee and his counsel as this court may fix as related to the sale of such assets, * * *." The record clearly supports this finding.

A letter dated July 27, 1964, from Mercantile to the Trustee's counsel, a copy of which is affixed to the Referee's findings of fact, contains the following excerpt:

"You have indicated that you and Mr. Verbest are reluctant to incur expenses and expend effort to sell the physical assets since Mercantile has asserted priority of its liens over all administration expenses. In order to induce you and the trustee to proceed with such sale, Mercantile hereby agrees that the court may order that all administration expenses incurred in connection with and reasonably related to any sale of the remaining physical assets may be deducted from the proceeds of sale before payment of the lien claims of Mercantile in and to

such proceeds. Such administration expenses which may be so deducted shall include \* \* \* such fees as the court may fix as reasonable compensation to the trustee \* \* \*. It is understood that the court shall fix and determine the amount of such fees \* \* \*. The sole purpose of this letter is to give assurance that Mercantile will not object to the payment, out of the proceeds of sales of assets to which it claims liens, of such reasonable fees for the trustee \* \* \* as the court may fix as related to the sale of assets to which Mercantile claims liens."

█ The Referee felt that he was authorized, pursuant to the aforenoted letter, to award such compensation to the Trustee for his services in connection with the sale as in his discretion was reasonable so long as such compensation was below the ceiling imposed by the Bankruptcy Act. 11 U.S.C.A. § 76c (1) and (2). The Referee allowed the Trustee $8,566.17. We cannot say this amount was unreasonable.

The Trustee had problems with Orbitronic's landlord. Its landlord objected (1) to the storage of the assets in question upon his property until the sale, and (2) to the actual sale itself. There were problems with the mortgage holders on the real estate as to whether certain of the assets in question were fixtures, and with the United States of America which claimed certain taxes or tax liens on the real estate. The Referee was required to conduct a hearing on these questions, in connection with which a personal inspection of the premises was deemed advisable. Mercantile obtained a guaranteed bid of $225,000 from two firms for the assets in question. It urged that the Trustee deal with those firms. The Trustee declined to do so and ultimately obtained $428,308.42 for those assets. It cannot be denied that all of the aforementioned services were intimately connected with the sale of the assets in question, nor can it reasonably be denied that such services were substantial and merited the compensation awarded by the Referee.

Mercantile alleges that the Referee's was to apply to the proceeds of sale the percentages specified in 11 U.S.C.A. § 76c (1) for normal bankruptcy administration, and then to increase these percentages to nearly double under the provisions of 11 U.S.C.A. § 76c (2) relating to trustees who conduct the business of the bankrupt. Mercantile urges that in its letter of July 27, 1964, it agreed to compensate the Trustee for conducting the sale and not for operating the bankrupt's business. It, therefore, contends that the Trustee's compensation should not exceed that which would be allowable under 11 U.S.C.A. § 76c (1).

The Referee did not compensate the Trustee *as* an operating Trustee, although he found as a matter of fact that the Trustee was an operating Trustee. He compensated him upon the basis of the amount to which an operating Trustee would be entitled for conducting the business under the circumstances of this case, but only because he felt this was a reasonable amount, not because the Trustee was an operating Trustee per se.

At a hearing on February 17, 1965, the Referee aptly answered Mercantile's objections (T. p. 13):

"\* \* \* It is the Court's understanding that Mercantile Financial Corporation at the time of the petition and order for the sale, agreed that they would pay the reasonable costs and expenses in connection with the sale of the assets, which included the fees of the trustee and counsel for the trustee. At that time no method was agreed upon as to how those fees were to be determined. The Court believes that it was left to the discretion of the Court to determine a reasonable fee for Mr. Verbest's services in connection with the sale of the assets at the auction. Now, there might be several ways of arriving at the value of such services, including an hourly basis, or a percentage basis. The Court therefore, in determining what

a reasonable fee would be for the trustee in connection with the sale of the assets, decided that the fee which would be allowed to a trustee who was entitled to be compensated as an operating trustee would be a reasonable fee in connection with his services in this case. The Court definitely doesn't have in mind that he was necessarily entitled to compensation as an operating trustee, the Court merely believes he was entitled to reasonable compensation, which in the opinion of the Court would equal that which an operating trustee would have been entitled to under the circumstances, * * *."

Mercantile's letter authorized the Referee to determine, in his discretion, not only what was a reasonable amount but the standard of reasonableness as well. As a result of the activities of the Trustee, a sale very advantageous to Mercantile was successfully concluded. The amount awarded was in fact not unreasonable considering the substantial nature of the Trustee's services.

## II. FEES FOR THE REFEREES' SALARY AND EXPENSE FUND

The Referee charged against the proceeds of the sale of Orbitronic's assets proportionate fees for the referees' salary and expense fund. Mercantile objects.

▇ The great majority of courts hold that where a lienholder expressly or even impliedly consents to a sale free and clear of liens, at least when the sale fails to bring in enough to discharge the lien and interest thereon in full, the proceeds are chargeable with the actual costs of the sale and the proportion of the administrative expenses which may properly be attributed to the sale, including fees for the referees' salary and expense fund, computed upon the net proceeds. 4 Collier on Bankruptcy, § 70.99(6), at 1907–10 (14th ed. 1964). We adopt this view.

It is only just that a secured creditor who does not consent to a sale free of liens by the bankruptcy court should suffer no greater deduction from the amount of sale proceeds due him for bankruptcy administration expenses than the amount it would cost such secured creditor to foreclose his lien under State law. If, however, he consents to such sale, there is no reason why he should not pay his proportionate share of those administrative expenses which are properly attributable to the sale. If he desires to pay only the cost of foreclosure under State law, he need only refuse to consent to the sale free of liens.

It should be remembered that the bankruptcy court operates in a different manner than most courts in that it is expected that the fees and commissions which are paid to the referees' salary and expense fund come from the assets of bankrupt estates and will support the operation of the court. It is, perhaps, unique among courts in that it is completely self-supporting. The rule we have announced above takes frank recognition of this fact.

A very small minority of courts have taken the position that a lienholder, even though he consents to a sale free of liens, is ordinarily entitled to the full amount of his lien minus only a contribution to the expense of administration measured by and not in excess of what it would have cost to foreclose the lien under State law. 4 Collier on Bankruptcy, § 70.99(6), at 1914 (14th ed. 1964). Collier states, and this Court agrees, that the majority position previously noted and adopted is preferable. 4 Collier on Bankruptcy, supra, at 1907.

Mercantile contends, citing two relatively ancient decisions, that the Seventh Circuit follows the antiquated minority position explained above. In re Utt, 105 F. 754 (7th Cir. 1901); In re Bruce Sewing Machine Co., 2 F.Supp. 330 (S.D. Ill.1930). We cannot agree.* As Col-

---

* Collier notes with respect to the case of In re Utt, 105 F. 754 (7th Cir. 1901): " * * * whatever authority this case had with regard to administrative expenses such as referees' and trustees' commissions attributable to a sale free of

lier points out in 4 Collier on Bankruptcy, supra, n. 45 at 1915:

"Although the cases decided in the Seventh Circuit and cited supra have been supposed to limit the expenses allowable against lienholders in that circuit to what would have been charged them in non-bankruptcy proceedings, several recent cases have imposed the expenses of sale and preservation of the property on lienholders without adverting to such a limitation. See In re Tyne (C.A.7th, 1958) 257 F.(2d) 310, citing Treatise; In re Chapman Coal Co. (C.A.7th, 1952) 196 F.(2d) 779; Matter of Halferty (Ref., E.D. Ill.1942) 51 Am.B.R.(N.S.) 381, aff'd (C.C.A.7th, 1943) 54 Am.B.R.(N.S.) 113, 136 F.(2d) 640; Matter of Centralia Refining Co. (E.D.Ill.1940) 47 Am.B.R.(N.S.) 496, 35 F.Supp. 599."

Mercantile argues that it did not consent to the sale. It alleges that it was forced to petition the court to order the Trustee to sell. It supports this contention by a statement that it repeatedly urged the court to order the Trustee to abandon the assets in question. Since the court would not do this, Mercantile contends it was compelled to petition the court for sale of the assets to prevent their diminution in value.

■ This contention is now clearly specious. Mercantile not only consented to the sale—it petitioned for the sale. When its suggestion of sale met with initial resistance from the Trustee, it sent a letter to the Trustee's counsel stating that it agreed that the court might order all administration expenses incurred in connection with and reasonably related to any sale of the assets in question deducted from the proceeds of sale before payment of the lien claims of Mercantile. At the hearing on Mercantile's petition for sale on September 1, 1964, three different parties objected to the sale. Mercantile's counsel argued

quite extensively to put these objections at ease. As a result of Mercantile's active inducement, a sale very profitable to it was successfully concluded. In the face of such active inducement, this Court holds Mercantile consented to the sale in question.

Even under the minority position previously explained, Mercantile could not succeed for it did far more than merely consent to the sale in question. It actively induced that sale, a sale from which it derived substantial benefits.

For the foregoing reasons,

It is ordered that the Referee's decision of April 20, 1965, as to the two issues involved in this review be and the same is hereby approved and affirmed.

---

liens it was no longer important in this respect after the amendments of 1903 and 1910 to §§ 40 and 48, respectively. * * * The Utt case expressly grounded its decision in this regard on an in-

terpretation of §§ 40 and 48 as they existed prior to 1903 and 1910." 4 Collier on Bankruptcy, § 70.99(6), n. 45 at 1915 (14th ed. 1964).