### In re Paul MELITA and Kay Melita, Debtors.

### Bankruptcy No. 87–01426F.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 14, 1988.

Roger Ashodian, Delaware County Legal Assistance Ass'n, Inc., Chester, Pa. for debtors, Paul Melita and Kay Melita.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

This is the debtors' motion to limit the compensation of the standing chapter 13 trustee in this case on the basis of hardship. The motion presents two narrow but significant issues. The first is whether a bankruptcy court retains power to adjust the compensation of a standing chapter 13 trustee following the implementation of the United States Trustee system in this jurisdiction upon enactment of the 1986 amendments to the Bankruptcy Code. To the extent I answer that question in the affirmative, I must consider the limits of that power and decide whether the facts of this case place it within the applicable borders.

### I.

The debtors and the chapter 13 trustee have presented their cases by stipulation only and the facts are not in dispute.[1] I shall summarize the few facts supplied prior to addressing the legal questions at issue.

In this district the chapter 13 trustee is Edward Sparkman, Esquire. He was appointed by the court in late 1986, shortly prior to institution of the United States Trustee system in this district. He was then apparently reappointed by the United States Trustee. See 28 U.S.C. § 586(b). See also Pub.L. No. 99–554 Sec. 308(b) (1986) (establishing Congressional preference for reappointment of existing trustees). His percentage fee has been set at 10%. See 28 U.S.C. § 586(e)(1); former 11 U.S.C. § 1302(e)(1) (repealed 1986).[2]

The debtors, Paul and Kay Melita, filed pursuant to chapter 13 of the Bankruptcy Code on March 25, 1987. They ultimately submitted amended schedules on September 21, 1987 which listed total debts of $35,730.42. Their current plan calls for payments to priority creditors of $1,021.85 and to secured creditors in the amount of $10,179.69. No payments are planned to unsecured creditors.[3] Among the payments listed as priority is a total payment of $533.38 for the standing chapter 13 trustee. This proposed fee constitutes approximately one half of the percentage fee which would normally be required for this case, and is the predicate for the motion under consideration here.

In support of their position that payment of a full 10 percent fee would cause them hardship, the debtors point out solely that their plan incorporating the reduced fee and taking into account their current monthly expenses leaves them only 31 cents cushion after plan payments. They argue that they would not be able to propose a confirmable plan if they are required to pay the full percentage fee and that the consequent failure of their bankruptcy would cause them hardship.[4]

### II.

In this district, prior to passage of the Bankruptcy Judges, United States Trustees

---

1. The United States trustee has not taken a position in this case.

2. My resolution of this matter obviates the need for me to reach the issue of whether the court retains power to set Mr. Sparkman's fees because he was initially appointed and had his fee set by the court rather than the United States Trustee and/or because this case arose prior to implementation of the U.S. Trustee system here. See 28 U.S.C. § 586(e)(1). The United States Trustee system became effective in this district on August 27, 1987. See Pub.L. No. 99–554, § 302(d)(1) (1986). I also note that § 113 of the 1986 Act, 28 U.S.C. § 586(e)(1), became effective 30 days after enactment, Pub.L. No. 99–554, § 302(a) (1986), except as specified in § 302(e).

3. No party has objected to confirmation on the basis of 11 U.S.C. § 1325(a)(3) or for any other reason. See In re Hines, 723 F.2d 333 (3rd Cir.1983); In re March, 83 B.R. 270 (Bankr.E.D. Pa.1988). I do not pass on issues involved in the confirmation process.

4. No evidence was presented as to the potential effects on the debtors of a failed bankruptcy.

and Family Farmer Bankruptcy Act of 1986 (Pub.L. No. 99–554), compensation of the standing chapter 13 trustee was governed by 11 U.S.C. § 1302(e) (*repealed* 1986), which provided:

> (e)(1) A court that has appointed an individual under subsection (d) of this section to serve as standing trustee in cases under this chapter shall set for such individual—
>
>> (A) a maximum annual compensation, not to exceed the lowest annual rate of basic pay in effect for grade GS–16 of the General Schedule prescribed under section 5332 of title 5 and
>>
>> (B) a percentage fee, not to exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.
>
> (2) Such individual shall collect such percentage fee from all payments under plans in the cases under this chapter for which such individual serves as standing trustee. Such individual shall pay annually to the Treasury—
>
>> (A) any amount by which the actual compensation received by such individual exceeds five percent of all such payments made under plans in cases under this chapter for which such individual serves as standing trustee; and
>>
>> (B) any amount by which the percentage fee fixed under paragraph (1)(B) of this subsection for all such cases exceeds—
>>
>>> (i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of this paragraph; plus
>>>
>>> (ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases.

*See also* former 11 U.S.C. § 326(b) (*amended* 1986).

Under 11 U.S.C. § 1302(e) numerous courts had concluded that although a standing trustee's percentage fee was fixed pursuant to 11 U.S.C. § 1302(e)(1), a court retained power to review the fee upon request in individual cases and to make downward adjustments upon facts which so warranted. *See, e.g., Matter of Foster,* 670 F.2d 478, 491 (5th Cir.1982); *In re Hankins,* 62 B.R. 831, 836 (Bankr.W.D.Va. 1986); *In re Case,* 11 B.R. 843, 847 (Bankr. D.Utah 1981); *In re Eaton,* 1 B.R. 433, 434 (Bankr.M.D.N.C.1979). *See also* 5 *Collier on Bankruptcy* ¶ 1302.01 at 1302–24 (15th ed. 1988).

The question then becomes whether this power to review a standing trustee's compensation in individual cases has been retained following implementation of United States Trustee system in this district. By the law implementing the U.S. Trustee system, 11 U.S.C. § 1302(e) was eliminated entirely and compensation for standing trustees is now fixed by the Attorney General in consultation with the United States Trustee pursuant to 28 U.S.C. § 586(e). That subsection provides:

> (e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—
>
>> (A) a maximum annual compensation for such individual, not to exceed the annual rate of basic pay in effect for step 1 of grade GS–16 of the General Schedule prescribed under section 5332 of title 5; and
>>
>> (B) a percentage fee not to exceed
>>
>>> (i) in the case of a debtor who is not a family farmer, ten percent; or
>>>
>>> (ii) in the case of a debtor who is a family farmer, the sum of—
>>>
>>>> (I) not to exceed ten percent of the payments made under the plan of such debtor, with respect to payments in an aggregate amount not to exceed $450,000; and
>>>>
>>>> (II) three percent of payments made under the plan of such debtor, with respect to payments made after the aggregate amount of payments made under the plan exceeds $450,000;
>>
>> based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall deposit in the United States Trustee System Fund—

(A) any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans in cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee; and

(B) any amount by which the percentage for all such cases exceeds—

(i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of paragraph (I); plus

(ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases. Subject to the approval of the Attorney General, any or all of the interest earned from the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section.

*See also* current 11 U.S.C. § 326(b).

Current 28 U.S.C. § 586(e) is essentially identical, for the purposes of the matter presented here, to prior 28 U.S.C. § 586(e) governing compensation of standing trustees in districts for which the pilot United States Trustee program was implemented in 1978. *See In re Savage,* 67 B.R. 700 (D.R.I.1986). *See generally* former 11 U.S. C. § 15101 *et seq.* (*repealed* 1986).

### III.

In arguing that this court no longer has authority to determine the appropriate commission of a standing chapter 13 trustee in an individual case, the trustee relies heavily upon the thoughtful decision of *In re Savage,* 67 B.R. 700 (D.R.I.1986). *See*

*also In re Citrowske,* 72 B.R. 613, 615 (Bankr.D.Minn.1987). Although I agree with much of the statutory and policy analyses in *Savage,* I conclude, for the following reasons, that a greater residuum of court power over the commissions of chapter 13 trustees survived the implementation of the United States Trustee program that the *Savage* court suggests.

In evaluating whether the implementation of the United States Trustee system has eliminated the power of the courts to review the standing trustee's fee in individual cases, I note first that there is a long-standing principle of statutory interpretation that if Congress intends to statutorily alter judicial authority of longstanding, it clearly expresses that intent. Absent such expression, prior statutory interpretation remains viable. *See Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); *Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed. 2d 859 (1986); *In re Paolino,* 75 B.R. 641, 649 (Bankr.E.D.Pa.1987).

In the instant matter, I find the statute itself to be ambiguous. While 28 U.S.C. § 586(e) speaks to the establishment of a fixed fee for a standing chapter 13 trustee by the Attorney General, it does not speak to whether in a given case a court has power to review the fee ultimately collected. This point has been made most succinctly by Judge Votolato in a case decided under the pilot program which was later effectively overruled by a decision of his district court. *See In re Sousa,* 46 B.R. 343, 346 (Bankr.D.R.I.1985) *quoted in In re Savage,* 67 B.R. at 703 (D.R.I.1986) (overruling *Sousa*). As stated by Judge Votolato,

Administrative fixing of percentage rates of compensation, and judicial review of the reasonableness of such fees are separate functions, and there is nothing inconsistent in the Attorney General fixing such schedules and the court hearing objections to and determining the reason-

ableness of fees paid pursuant thereto.[5]

The legislative history of the United States Trustee program, both in its enactment as a pilot project in 1978 and in its expansion to other districts in 1986, offers little additional guidance. None of the legislative statements address the anticipated judicial role in evaluating the standing trustee's fees for individual cases. With regard to establishment of the pilot U.S. Trustee system, the Congressional Record reflects that "the main purpose of the U.S. Trustee is to remove administrative duties from the bankruptcy judge, leaving the bankruptcy judge free to resolve disputes untainted by knowledge of matters unnecessary to a judicial determination." 124 Cong.Rec. 32,410 (Sept. 28, 1978) (remarks of Rep. Edwards); 124 Cong.Rec. 34,010 (Oct. 5, 1978) (remarks of Sen. DeConcini). *See also* H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 439 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6394. Nothing in the record made upon the 1986 amendments to the bankruptcy code elucidates further.

This statutory ambiguity is heightened by provisions such as 11 U.S.C. § 326(d) which appears, by its terms, to apply to chapter 13 cases. *See* 11 U.S.C. § 103(a). This subsection would allow a court to deny the chapter 13 trustee's fee entirely for failing to exercise due care in hiring professional persons. *See generally In re Paolino,* 80 B.R. 341, 346 (Bankr.E.D.1987). Additionally, 11 U.S.C. § 330(c), which was added in 1984 and amended in 1986, now states:

Unless the court orders otherwise, in a case under chapter 12 or 13 of this title the compensation paid to a trustee serving in the case shall not be less than $5 per month from any distribution under the plan during the administration of the plan.

As noted in 2 *Collier on Bankruptcy,* ¶ 330.07 (15th ed. 1988) (footnote omitted):

Section 330(c) was added to the Code under the Bankruptcy Amendments and Federal Judgeship Act of 1984 and provides for minimum compensation to be paid to a trustee serving in a chapter 12 or 13 case. Unless the court orders otherwise, section 330(c) assures the trustee of compensation not less than $5 per month from any distribution under the plan during the administration of the plan. Presumably, this provision was designed to encourage private trustees to serve and to lessen the burden on United States trustees.

The effect of this subsection, though, is to provide the court with some authority to review payments to the trustee:

Unless the court orders otherwise, however, the percentage fee must be at least five dollars per month from any distribution under the plan, since the compensation paid to the chapter 13 trustee must be at least that much under section 330(c). The court is given discretion to lower this minimum fee in cases where it would be appropriate to do, such as where it could pose a hardship for low-income debtors who can afford only very modest plan payments.

5 *Collier on Bankruptcy,* ¶ 1302.01, at 1302–23 to 24 (15th ed. 1988). (footnote omitted).[6]

■ I appreciate that §§ 326(d), 330(c) should not be read, especially in light of 11 U.S.C. § 1326(b), as providing to courts the same authority over chapter 13 standing trustee commissions which they possessed prior to the U.S. Trustee program. *Cf. In re Shoreline Concrete Co. Inc.,* 831 F.2d 903 (9th Cir.1987) (bankruptcy court has no authority to reduce fees established by the Judicial Conference). Certain powers, formerly possessed by this court, have been transferred to the Attorney General. Nonetheless, I cannot find a clear congressional expression that there is no longer a

---

**5.** Then District Judge Selya in *In re Savage* notes that the statute is less than crystal clear, but finds that taken as a whole it tends to preclude judicial review of the fees set. He finds support for his conclusion in policy considerations which I will discuss below.

**6.** As discussed below, this statement of court discretion may be overbroad due to the enactment of current 28 U.S.C. § 586(e).

permissible judicial role in reviewing chapter 13 trustee fees upon objection in individual cases.[7] Without that expression, and given prior decisional law which has noted broad bankruptcy court discretion to review requests by trustees for compensation, *see e.g., In re Orbitronics, Inc.*, 254 F.Supp. 400 (E.D.Wisc.1966); *In re Garland Corp.*, 8 B.R. 826 (Bankr.D.Mass. 1981) and the various code provisions mentioned above, I am reluctant to conclude that there may not be certain limited circumstances in which genuine disputes may arise between parties to a bankruptcy case about the proper fee of the standing trustee which would require judicial resolution. These may include disputes about the nature of payments on which a fee is appropriate, *e.g., In re Erickson Partnership*, 83 B.R. 725 (D.S.D.1988); *In re Wright*, 82 B.R. 422 (Bankr.W.D.Va.1988), and questions of the appropriateness of a fee in cases involving trustee misconduct or interest. *See, e.g., In re Paolino*, 80 B.R. 341 (Bankr.E.D.Pa.1988). It is arguable that a chapter 13 trustee's commission might be challenged as unreasonable. *See In re Eaton.* In sum, given that the Attorney General has no appropriate dispute resolution mechanism, I am unprepared to hold that there are no circumstances under which it is permissible for a court to review the chapter 13 trustee's fee.[8] *Accord 5 Collier on Bankruptcy* ¶ 1302.01 at 1302–23 (15th ed. 1988) (footnotes omitted):

> The percentage fee is to be calculated by the court or by the Attorney General with a view to generating sufficient funds with which to defray the salary and the actual, necessary expenses of the standing chapter 13 trustee. However, it may be adjusted downward by the court in individual cases where there are unusually large payments or other circumstances which render the normal percentage inappropriate. Such adjustments may be made not only where the court sets the percentage fee but also in United States Trustee districts where it is set by the Attorney General.[9]

In drawing the conclusion that I retain some power to address disputes about the fee of the standing chapter 13 trustee, I am mindful of the policy considerations expressed by Judge Selya in *In re Savage.* I recognize that the congressional policy choice in providing for a fixed fee was clearly to spread the costs of administration among all chapter 13 cases. *In re Savage*, 67 B.R. at 706:

> .... the Pilot Program, as enacted, represented an effort to transfer ministerial responsibilities incident to Chapter 13 cases from a judicial arena to an administrative one, that is, from the bankruptcy courts to the Attorney General. The method of compensating standing trustees must realistically be viewed as an important part of this endeavor. Rather than enmire the courts in the laborious business of setting fees in individual cases—many of them small in terms of assets, and some of them bone-dry—the Code and Title 28 authorized the Attorney General to fix the allowances of standing trustees on a yearly basis. An overall sense of balance thus became achievable. The "no asset" or "meager assets" cases can be handled professionally, because the system is not dependent upon each individual matter to generate its own fees. To the contrary, the Attorney General considers the volume of cases committed to the trustee, reviews the trustee's program-related expenses for the prior year, and projects the amount of funds that will be handled during the upcoming year. This overall

---

**7.** I note that the language in 28 U.S.C. § 586(e)(2) which the trustee argues precludes judicial review of his fees is quite similar to former § 1302(e)(2). As cited above, the various courts which decided this issue prior to the 1986 amendments did not find § 1302(e)(2) an insuperable bar to relief.

**8.** I note also another longstanding principle of bility to the matter at bench, the strong presumption in favor of judicial review of administrative decisions. *See generally In re Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

**9.** Again, this statement of court discretion may be overbroad.

forecast—rather than the vicissitudes of each individual filing—becomes the cynosure of the fee calculation.

Thus, I appreciate that the circumstances in which fee reductions are appropriate must be limited. It cannot become the courts' function to set the appropriate fee on a case by case basis. *See In re Shoreline Concrete Co. Inc.*

## IV.

 I find here that I need not precisely delineate those cases in which a fee adjustment would be appropriate. As presented, there is no justification in this case to reduce the standing trustee's percentage fee.

The only reason for reducing the trustee's commission, offered by the debtors, is that they cannot afford to pay their administrative expenses while also paying their secured creditors. They make no suggestion of trustee misconduct or overreaching; they do not suggest that the fee fixed by the Attorney General is unreasonable or inappropriate. The debtors also overlook 11 U.S.C. § 1322(a)(2) which requires that

(a) The plan shall—

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

The debtor does not contend that this court could force a priority claimant to compromise its claim in order to insure confirmation. Here, the trustee holds the equivalent of an administrative claim, *cf.* 11 U.S.C. §§ 503(b)(2), 1326(b)(2), *In re Rose,* 86 B.R. 439 (Bankr.E.D.Pa.1988); yet, the debtors implicitly contend that the chapter 13 trustee is the only priority creditor who can be compelled to compromise his claim in the interest of allowing confirmation. Given the policy considerations behind § 586(e) and the limited role courts now have in determining the appropriate commission, I must reject this contention.

If the trustee wishes to compromise his administrative claim, and voluntarily reduce his fee, then § 1322(a)(2) will be satisfied. If not, on the facts presented, this court cannot compel him to do so.

An appropriate order shall be entered.

## ORDER

AND NOW, this 14 day of October, 1988, upon consideration of the motion to limit trustee's compensation, and the response thereto, and for the reasons set forth in the accompanying memorandum opinion, the motion is DENIED.