**In re Richard G. PAOLINO and Elaine M. Paolino, Debtors.**

**Bankruptcy No. 85–00759G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 11, 1987.

Martin J. Aronstein, Morgan, Lewis & Bockius, Philadelphia, Pa., for applicant/trustee, Horace A. Stern.

Jonathan H. Ganz, Pincus, Verlin, Hahn & Reich, P.C., Philadelphia, Pa., for husband/debtor, Richard Paolino.

Jeffrey Meyers, Charleston & Fenerty, Philadelphia, Pa., for wife/debtor, Elaine Palino.

Michael H. Reed, Richard J. Squadron, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Herbert Brener, trustee.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

This contested matter requires me to resolve some difficult issues concerning compensation of the former trustee in this case. The debtors, by separate counsel, have objected on various grounds to the fee application of Horace A. Stern, Esquire,

who previously relinquished his position as trustee because he became affiliated with a law firm which represented interests adverse to those of the estate. Although there have been no allegations that the trustee's actions harmed the estate in any way, the parties objecting to his compensation ask that the trustee be denied compensation entirely.

In order to resolve this matter, I must first determine whether the trustee is entitled to compensation at all. If so, I must determine whether compensation should be limited by reason of any occurrence during the period of his employment as trustee. If the trustee is entitled to fees for any period, I must then determine the appropriate amount of the award.

## I.

Horace Stern commenced his duties as trustee in this case on November 21, 1985. At that time he was not affiliated with any law firm and he did not immediately retain counsel to represent him. Initially, the trustee concerned himself primarily with motions by various parties to assume or reject executory contracts, the administration and sale of a parcel of real property owned by the estate, the conduct of certain state court litigation and the turnover of assets held by a receiver who had been appointed by the Court of Common Pleas of Bucks County.

Subsequently, on or about December 15, 1985, Mr. Stern began discussions about a possible association with the law firm of Fox, Rothschild, O'Brien & Frankel ("Fox, Rothschild"). At approximately the same time, Mr. Stern began to explore with Fox, Rothschild the possibility that it would represent him in this bankruptcy case.

Mr. Stern ultimately began a formal association with Fox, Rothschild on February 10, 1986. At about the same time, Fox, Rothschild began to represent Mr. Stern as counsel to the trustee.

Shortly thereafter, Mr. Stern undertook to open a file in Fox, Rothschild's office for the Paolino bankruptcy. As part of the required procedure, Mr. Stern circulated a conflict sheet to all attorneys at the firm. On or about February 12, 1986, Mr. Stern was apprised by a Fox, Rothschild attorney that the firm represented a defendant in pending state court litigation which had been instituted by the debtors prepetition. On approximately March 14, 1986, after some discussion between Mr. Stern and various members of the Fox, Rothschild hierarchy and between Fox, Rothschild and its client in the state court matter, Fox, Rothschild withdrew as counsel to Mr. Stern in this bankruptcy case.[1] Mr. Stern consequently obtained other counsel.

Thereafter, following objections to Mr. Stern's continued employment as trustee, Mr. Stern agreed, with some reluctance, to resign his position in September, 1986, and a substitute trustee was appointed.

This fee dispute resulted from Mr. Stern's application for interim compensation for the approximately ten month period during which he served as trustee. Mr. Stern seeks compensation for 114 hours of work at $110.00 per hour.[2] The parties essentially agree that the approximate value of the estate from which compensation may be awarded is $375,000.00.[3] Pursuant to 11 U.S.C. § 326(a) the estate would thus generate maximum potential trustee fees in the amount of $11,430.00. The fee of Mr. Stern and his successor together could not exceed that amount. *See* 11 U.S.C. § 326(c).

The objectors contend that the former trustee's fee should be denied in its entire-

---

**1.** Fox, Rothschild has not sought compensation from the estate for its services as counsel to the trustee.

**2.** At the hearing in this matter, Mr. Stern's present counsel conceded that Mr. Stern is not entitled to compensation for approximately 5 hours he spent discussing the potential conflict in this case with members of the Fox, Rothschild firm. Thus, the total amount sought is $11,990.00.

**3.** The debtors point out that a small portion of the funds presently included in the estate may constitute post-petition assets of the debtors which they contend should not be distributed. The small amount of those funds would not affect the outcome of this contested matter.

ty because of the conflict. They further argue that Mr. Stern's fee request should be disallowed pursuant to 11 U.S.C. § 326(d) because he did not adequately inquire about the potential conflict before retaining Fox, Rothschild as counsel. The current trustee has not objected to Mr. Stern's application for compensation and takes no position on the appropriate amount of Mr. Stern's fee.[4]

It is important to note that no party asserts any wrongdoing on the part of Mr. Stern or Fox, Rothschild and that no party claims that the conduct of the state court litigation in which Fox, Rothschild participated was in any way altered because of Mr. Stern's or Fox, Rothschild's participation in this case.

## II.

The first question which must be addressed is whether Mr. Stern's affiliation with a law firm representing interests in conflict with those of the estate constitutes grounds for denial of fees. 11 U.S.C. § 1104(c) requires that a trustee in a chapter 11 case be a "disinterested person." It follows that lack of disinterestedness would be cause for removal of a trustee pursuant to 11 U.S.C. § 324 and for a subsequent denial of fees. *In re O.P.M. Leasing Services, Inc.*, 16 B.R. 932 (Bankr.S.D.N.Y.1982). *See Arkansas Communities, Inc. v. Mitchell*, 46 B.R. 403 (W.D.Ark. 1983).

The Bankruptcy Code defines "disinterested person" as a person who

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

11 U.S.C. § 101(13).

In the case at bench, the issue is whether Stern, by reason of his affiliation with Fox, Rothschild, had "an interest materially adverse to the interest of the estate."

Several courts have stated that the requirement of disinterestedness is intended "to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration". *In re Martin*, 817 F.2d 175, 181 (1st Cir.1987) *quoting Matter of Codesco, Inc.*, 18 B.R. 997, 999 (Bankr.S.D.N.Y.1982). The same courts have concluded that a "disinterested person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters". *Id. See also, In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328 (E.D. Pa.1982).

Because Fox, Rothschild represented a defendant in an action which had been commenced by the debtors, and which, upon entry of the order for relief, became property of the estate, I believe it is clear that Fox, Rothschild was not "disinterested" within the meaning of section 101(13)(E). The debtors' cause of action against the Fox, Rothschild client passed to the estate so as to be within the trustee's control. *See* 11 U.S.C. §§ 541, 1106. By representing the trustee, Fox, Rothschild would, in effect, have been counsel to both

---

4. I note, however, that counsel to the current trustee represented Mr. Stern after Fox, Roths- child withdrew.

plaintiff and defendant in the same suit. Without question, that dual representation precluded Fox, Rothschild from serving as trustee's counsel. *Matter of Perry, Adams & Lewis Securities, Inc.*, 5 B.R. 63 (Bankr.W.D.Mo.1980). *See Glueck v. Jonathan Logan, Inc.*, 512 F.Supp. 223 (S.D. N.Y.) *aff'd.* 653 F.2d 746 (2nd Cir.1981); *In re Johore Investment Company, Inc.*, 49 B.R. 710, (Bankr.D.Hi.1985). *But cf. In re Delta Services Industries*, 782 F.2d 1267 (5th Cir.1986) (appeal dismissed for lack of jurisdiction where courts below refused to disqualify trustee and trustee's counsel who had served as plaintiff's counsel in state court action in which the debtor was a defendant).

 Similarly, upon becoming affiliated with Fox, Rothschild, Mr. Stern was no longer a disinterested person eligible to serve as trustee. When one member of a firm is disqualified for interest, all members of that firm must be similarly disqualified. *Philadelphia Athletic Club*, 20 B.R. at 338 n. 11. *See United States v. Miller*, 624 F.2d 1198 (3d Cir.1980); *Realco Services, Inc. v. Holt*, 479 F.Supp. 867, 871 (E.D. Pa.1979); *In re Farmers Co-op of Arkansas & Oklahoma, Inc.*, 53 B.R. 600 (Bankr. W.D.Ark.1985).[5]

 Because 11 U.S.C. § 1104(c) incorporates the requirement that a trustee be disinterested into the eligibility standard for serving as trustee, *O.P.M. Leasing*, I do not believe that there is any basis for a lower standard of eligibility to serve as trustee than as counsel to the trustee. *Compare* 11 U.S.C. § 327(a) *with* 11 U.S.C.

§ 1104(c). The Code requires both the trustee and his or her counsel to be "disinterested".[6] Given the definition of "disinterested" in section 101(13)(E), either a trustee or his or her counsel must be disqualified where it holds an interest adverse to the estate whether or not it acts to advance that interest. The definition of disinterestedness in the Code covers not only actual impropriety, but the appearance of impropriety as well. *Martin, Codesco.*

I thus question the reasoning of those cases which have relied on *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir.1965) to hold that "potential conflicts of interest do not warrant the removal of a trustee in the absence of fraud or actual injury" and that "grounds for disapproval or removal of a trustee in bankruptcy are not to be found in his formal relationships." *Matter of Rea Holding Corp.*, 2 B.R. 733 (S.D.N.Y.1980); *In re Hartley*, 50 B.R. 852 (Bankr.N.D.Ohio 1985). *See also, In re Microdisk, Inc.*, 33 B.R. 817 (D.Nev. 1983); *In re Acadiana Electrical Service, Inc.*, 66 B.R. 164 (Bankr.W.D.La.1986); *In re Peckinpaugh*, 50 B.R. 865 (Bankr.N.D. Ohio 1985); *In re Concept Packaging Corp.*, 7 B.R. 607 (Bankr.S.D.N.Y.1980).

I believe that grounds for disqualification of Mr. Stern as trustee arose as of the date on which he became affiliated with Fox, Rothschild. On that date, Mr. Stern, as trustee, controlled litigation in which his law firm represented an opposing party. The fact that Mr. Stern and Fox, Rothschild were not yet aware of the conflict is irrelevant. The fact of the adverse interest

---

**5.** I will not go further to hold that Mr. Stern was no longer disinterested on the date that he commenced discussions with Fox, Rothschild about a possible affiliation. My finding that Mr. Stern was no longer disinterested is based upon his membership in a firm which had to be disqualified for interest. There is no evidence that prior to joining the firm Mr. Stern knew of or acted upon any interest adverse to the estate. Upon joining the firm, however, a presumption arises that Mr. Stern knew of and participated in the activities of the firm in general. *See United States v. Miller, Realco Services.*

**6.** I need not decide, in the matter *sub judice*, whether the concept of disinterestedness differs as between a trustee and counsel to the trustee,

although I note that 11 U.S.C. § 327(c) was amended in 1984 to eliminate the *per se* prohibition against concurrent representation of a creditor and the trustee. It is possible that even under § 327(c), as amended, the "appearance of impropriety" would disqualify a professional from appointment. *See* 2 *Collier on Bankruptcy* ¶ 327.03[4], at 327–33 (15th ed. 1987). ("While current representation of a creditor is no longer a *per se* bar to employment by the trustee ... an actual conflict of interest or appearance of impropriety remain an independent grounds for disqualification"). Here, the trustee had an actual conflict due to his association with a firm representing a defendant in an action controlled by the trustee.

created the appearance of impropriety. *See Martin; Codesco.*

Thus, Mr. Stern was no longer eligible to serve as trustee as of February 10, 1986. Consequently, his fees after that date cannot be allowed. *Woods v. City National Bank and Trust Co. of Chicago,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed.2d 820 *reh. den.* 312 U.S. 715, 61 S.Ct. 736, 85 L.Ed. 1145 (1941). *See In re Marine Power & Equipment Co., Inc.,* 67 B.R. 643 (Bankr.W.D. Wash.1986); *In re Philadelphia Athletic Club,* 38 B.R. 882 (Bankr.E.D.Pa.1984); *In re Chou–Chen Chemicals, Inc.,* 31 B.R. 842 (Bankr.W.D.Ky.1983). As stated in *Woods,* 312 U.S. at 268, 61 S.Ct. at 497: "it is no answer to say that fraud or unfairness were not shown to have resulted."

■ Because Mr. Stern did not have a conflict when this case arose and because there have been no allegations that services performed by Mr. Stern prior to February 10, 1986 had no value to the estate, I will not deny the trustee compensation for his services prior to February 10, 1986. Where the circumstances constituting lack of disinterestedness did not arise until after appointment, it would be unfair to deny the trustee compensation for services rendered in good faith prior to the date on which the conflict arose.[7] *See In re Porter,* 52 B.R. 692 (Bankr.E.D.Va.1985); *In re Watson Seafood & Poultry Co., Inc.,* 40 B.R. 436 (Bankr.E.D.N.C.1984).

### III.

■ In allowing Mr. Stern compensation for services rendered prior to February 10, 1986, I reject the debtors' argument that all compensation must be denied, because Mr. Stern failed to comply with 11 U.S.C. § 326(d). That section provides:

(d) The court may deny allowance of compensation for services or reimbursement of expenses of the trustee if the trustee failed to make diligent inquiry into facts that would permit denial of allowance under section 328(c) of this title or, with knowledge of such facts, employed a professional person under section 327 of this title.

Section 326(d) is derived from former Bankruptcy Rule 10–206(b) which provided for denial of compensation to a trustee who "failed to make diligent inquiry into the connection" of an attorney hired to represent the trustee.[8]

Section 326(d) thus expands upon former Rule 10–206 insofar as it allows denial of compensation not only when the trustee fails to make diligent inquiry but also when the trustee knowingly employs an attorney who should be disqualified. The provision now "creates a dual standard of intentional and unintentional or negligent misfeasance". 2 *Collier on Bankruptcy* ¶ 326.04 at 326–45 (15th Ed.1987).

In the matter at bench, the movants argue only that Mr. Stern should have inquired into the potential conflict of Fox, Rothschild before hiring the firm. There is no allegation that Mr. Stern knew of Fox, Rothschild's connection to the state court litigation at the time he engaged the firm as counsel. The movants contend that the standard for a diligent inquiry would include a requirement that a trustee circulate a memo to members of a firm, seeking to identify conflicts, prior to engaging that firm. Although the movants recognize that Mr. Stern did, in fact, circulate such a memo at Fox, Rothchild shortly after the firm commenced representing him and that Fox, Rothschild expeditiously withdrew upon discovering the conflict, the movants apparently believe that a diligent inquiry by the trustee would have identified the conflict in advance so that Fox, Rothschild would never have been retained.

■ Unfortunately, neither party cited and I am unable to discover any reported

---

7. Expenses which benefitted the estate could also be allowed whether or not they occurred after the date on which Mr. Stern's conflict arose. *Woods,* 312 U.S. at 269–70, 61 S.Ct. at 497–98, *Philadelphia Athletic Club, Inc.,* 38 B.R. at 887. However, Mr. Stern has not sought reimbursement of any expenses.

8. *See also* former General Order in Bankruptcy 44 ("Appointment of Attorneys") *cited in Matter of Arlan's Department Stores, Inc.,* 615 F.2d 925, 931 n. 2 (2nd Cir.1979).

decisions which have interpreted or applied the relevant portions of section 326(d), former rule 10–206(b) or General Order 44.[9] It is clear, however, that the provisions of § 326(d) are permissive and give the court discretion to deny or allow compensation even where the evidence indicates that the trustee failed to make diligent inquiry. *See* Norton, *Bankruptcy Law and Practice* § 13.18, 13–24 (1984) ("Norton").

 The legislative history of this subsection indicates that section 326(d) "permits the court to deny compensation of a trustee if the trustee has been derelict in his duty by employing non-disinterested counsel." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 328 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6284. The use of the word "derelict" in the legislative history and the severity of the penalty proposed (total denial of compensation) suggest that reasonably careful investigation by the trustee should be considered diligent. Norton § 13.18, 13–24. When the trustee acts with reasonable care under the circumstances, he has not been "derelict in his duty". Where the trustee does, in fact, investigate prior to any harm to the estate and the investigation results in expeditious withdrawal of counsel, no penalty should be imposed.[10] For that reason I will not deny Mr. Stern compensation for all of his services.

### IV.

 All that remains is for me to review the former trustee's application for fees up until February 10, 1986, the last date for which fees will be allowed. Mr. Stern requests compensation for 32⅔ hours spent through February 10 at a rate of $110.00 per hour, for a fee requested of $3,593.33. Upon consideration of this application, I will approve all but the two hours of time spent by Mr. Stern on January 29, 1986 during which he met with Fox, Rothschild to discuss the firm's representa-

tion of him as trustee and drafted a motion for appointment of that firm as counsel. Moreover, I will accept Mr. Stern's request for compensation at $110.00 per hour, which is 60% of his normal hourly rate as a practicing attorney.

Therefore, I will approve compensation for Mr. Stern in the amount of $3,373.33.

An appropriate order will be entered.

9. The absence of case law is some evidence that litigants historically have not sought enforcement of section 326(d), or its predecessors, and thus that trustees have not been held previously to the very high standard of diligent inquiry sought by the objectors in this proceeding.

10. I note that a trustee's fiduciary responsibility to the estate creates an additional incentive for careful selection of counsel. *See In re Rigden,* 795 F.2d 727 (9th Cir.1986); *In re Neshaminy Office Building Associates,* 62 B.R. 798 (E.D.Pa. 1986).