### In re MICRO–TIME MANAGEMENT SYSTEMS, INC., Debtor.

**Bankruptcy No. 88–01181–R.**

United States Bankruptcy Court, E.D. Michigan, S.D.

June 23, 1989.

Arnold Schafer, Birmingham, Mich., for debtor.

David Allard, Detroit, Mich., for trustee.

Lawrence Stockler, Southfield, Mich., for creditor.

Claretta Evans, Detroit, Mich., for U.S. trustee.

### MEMORANDUM OPINION AND ORDER ·

I.

STEVEN W. RHODES, Bankruptcy Judge.

John C. Bohl, Jr. was appointed Chapter 11 operating trustee of Micro–Time Management Systems, Inc. ("Micro–Time") on June 2, 1988. Parker, Bohl & Associates, an accounting firm in which Bohl is a partner, was appointed accountants for the trustee on July 12, 1988. The accountants for the trustee and the trustee subsequently filed first interim applications for fees. The United States Trustee and Lawrence J. Stockler, a creditor of the debtor, filed objections to both applications. Several hearings have been held on these objections and the only remaining objection to be resolved concerns an alleged conflict of interest regarding Bohl's relationship with Comerica Bank ("Comerica"), a major creditor of the debtor. This opinion resolves this final objection.

### II. *Facts*

Bohl's first involvement with the Micro–Time case occurred when he was contacted in late April or early May 1988 by Arnold Schafer, the debtor's attorney. At that

time, Schafer informed Bohl of the basic circumstances of the case, including the fact that Micro–Time was involved in litigation with Comerica in numerous venues. Schafer indicated that an outside party, such as an expert witness or operating trustee, might provide a stabilizing influence in the case.

Schafer contacted Bohl again in mid-May 1988 and requested his services as an operating trustee for Micro–Time. During this conversation Bohl informed Schafer of two facts which he thought might present a conflict of interest. First, a staff accountant of Parker, Bohl & Associates had performed accounting work for Micro–Time while employed by another accounting firm.

Secondly, and more significantly, Bohl, as a general partner in RGB Management Services, was working as a consultant to Comerica in a foreclosure case involving Computer Alliance Corporation ("Computer Alliance"). According to an affidavit submitted by Bohl in response to the objections to his fee applications, the services provided to Comerica by RGB Management Services included "a valuation of service contracts, liquidation of an out-of-state branch office, negotiations with the IRS regarding an out-of-state branch which owed back taxes, examination and review of the foreclosed company's records, recommendations regarding foreclosure and the preparation for litigation support in Comerica's lawsuit against the foreclosed company's former accountants." Bohl told Schafer that the Computer Alliance case was "winding down and was almost over." Bohl states in his affidavit that the consulting work on the Computer Alliance case began in late March, 1986 and that more than 92% of the work performed by RGB Management Services was completed by May 24, 1988.[1]

Based upon what Bohl had told him, Schafer told Bohl that he did not believe that either of these circumstances created a conflict of interest.

Bohl was appointed as the operating trustee of Micro–Time on June 2, 1988. At the request of the U.S. Trustee, Bohl reviewed several documents relating to his appointment, as well as 11 U.S.C.A. § 101(13), and prepared a declaration of disinterestedness. Bohl subsequently applied to retain Parker, Bohl & Associates as accountants for the trustee. That application, which included a statement that the firm did not hold any interest adverse to Micro–Time and that neither Bohl nor any member of his firm had "any relationship or interest in [Micro–Time] or any other party in interest," was approved on July 12, 1988.

Stockler asserts that Bohl's work for Comerica, as well as what Stockler alleges is a continual attempt to solicit additional work from Comerica, creates a conflict of interest which should disqualify Bohl as trustee and Parker, Bohl & Associates as accountants for the trustee. He also contends that Bohl and his accounting firm should be denied any fees for work already performed.

Stockler contends that Bohl's answers to interrogatories reveal that Bohl made presentations to and had discussions with personnel from Comerica's Central Loan Administration department while attempting to solicit work for RGB Management Services. Stockler alleges that this was the same department, and some of the same individuals, with which Bohl, as trustee, negotiated a settlement of litigation between Micro–Time and Comerica. Stockler contends that this settlement was excessive in light of Comerica's underlying cause of action and that it prejudiced Micro–Time and its creditors. Stockler implies that Bohl's alleged conflict of interest, stemming from his desire to solicit additional work from Comerica, caused him to agree to a settlement favorable to Comerica but prejudicial to Micro–Time, and to generally neglect his duties as operating trustee.[2]

---

1. Between May 24, 1988 and December, 1988, RGB Management Services spent 63.3 hours working on the Computer Alliance case, primarily in review of former accountants' workpapers for litigation support.

2. Stockler also claims that Parker, Bohl & Associates' fee application seeks fees for work per-

In response, Bohl asserts that at no time did he believe that he had an actual conflict of interest or any interest adverse to that of Micro–Time. He states that neither he nor Parker, Bohl & Associates had ever been employed by Comerica or any other creditor of Micro–Time. He also notes that he was not represented by counsel at the time he accepted the appointment as operating trustee and implies that he relied upon the opinion of the debtor's counsel, Arnold Schafer, in concluding that his work for Comerica did not present a conflict of interest. Bohl contends that he believed his declaration of disinterestedness to be accurate at the time he executed it and that he continues to believe that it is accurate.

Bohl claims that, after being appointed operating trustee, he informed Otis Kirkland, president of Micro–Time, and Ellen Wilson, Micro–Time's office manager, that he was a consultant to Comerica in the Computer Alliance case. In addition, once he discovered that one of the Comerica employees involved with Micro–Time had also worked on the Computer Alliance case, Bohl advised Kirkland and Wilson of his acquaintance with that employee.

Bohl also stated in his affidavit that he believes he advised an attorney with the Office of the U.S. Trustee of his work for Comerica at the first status conference in June, 1988. However, Bohl's attorney admitted at the hearing on this matter that he has no proof that the disclosure was actually made at that time. Bohl notes that the Office of the U.S. Trustee certainly had notice of Bohl's involvement with Comerica in November 1988, when Kirkland sent a letter to the U.S. Trustee regarding the situation.

With regard to the settlement reached between Comerica and Micro–Time, Bohl contends that he undertook his own investigation of the matter and then acted in good faith, for the benefit of the estate. In addition, he alleges that it was Kirkland himself who actually negotiated the final settlement figure and then signed the settlement documents along with the trustee.

Bohl also argues that Stockler and any other party should be found to have waived their right to question the propriety of the settlement and to raise the conflict of interest issue. He contends that all parties in interest had notice of the settlement and should have raised their objections at that time. He implies that Stockler is questioning the settlement now only because he can cast it in a bad light in conjunction with Bohl's alleged conflict of interest. Accordingly, Bohl requests that this Court conclude that he does not have a conflict of interest and award him the requested fees.

### III. *Conflict of Interest*

#### A. The Accountant for the Trustee

A bankruptcy trustee may apply for court approval to employ professional persons, including accountants, to represent or assist the trustee in carrying out the trustee's duties. 11 U.S.C.A. § 327(a) (West 1979). Any such professional persons appointed to represent or assist the trustee must be disinterested and may not "hold or represent an interest adverse to the estate...." *Id.* "Disinterested person" is defined by section 101(13):

"disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

---

formed by accountants but which is customarily considered to be the duty of the trustee. Stockler alleges that this is an attempt by Bohl to receive more fees for his trustee's services than allowed by 11 U.S.C.A. § 326(a). Stockler characterizes this as "double dipping" and asserts that it is not in the best interest of the estate.

Bohl denies these allegations, contending that he acted to the extent of his best judgment and without any intent to "double dip."

Because of the result reached herein, the Court will not address this allegation.

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

11 U.S.C.A. § 101(13) (West 1979).

Although section 101(13)(A) states that a creditor of the debtor cannot be a disinterested person in a case under chapter 7, 11, or 12,

Section 327(c) states that a professional is not disqualified "solely because of such person's employment by or representation of a creditor," so long as he does not represent them simultaneously in connection with the case. The emphasis here is on the word *"solely,"* which means that, if other circumstances exist, disqualification may be required....

*In re Roberts,* 46 B.R. 815, 822 (Bankr.D. Utah 1985), *modified,* 75 B.R. 402 (D.Utah 1987). Such a professional may be disqualified from employment by the trustee if, upon objection by a creditor or the U.S. Trustee, the court finds that the professional's employment presents a conflict of interest.[3] 11 U.S.C.A. § 327(c) (West Supp. 1989). In addition, a professional cannot be employed by the trustee if that person has "an interest materially adverse to the interest of the estate or any class of credi-

tors or equity security holders...."[4] 11 U.S.C.A. § 101(13)(E) (West 1979).

The case law makes it clear that "the standards for the employment of professional persons are strict...." *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1256 n. 6 (5th Cir.1986).

[T]he avoidance of a real appearance of impropriety is of chief concern to a court of bankruptcy.... [I]t is not sufficient that the trustee and his counsel actually be disinterested; the appearance of ... [interestedness] must also be avoided: "It becomes the duty of the trustee and of his attorneys not only to be impartial and free from the influence of any secured holder, but the other security holders must have faith and confidence in their impartiality and independence."

*In re Perry, Adams & Lewis Securities, Inc.,* 5 B.R. 63, 64 (Bankr.W.D.Missouri 1980) (quoting *In re Chicago Rapid Transit Co.,* 93 F.2d 832, 838 (7th Cir.1937)). *See also, In re Paolino,* 80 B.R. 341, 345 (Bankr.E.D.Pa.1987) ("The definition of disinterestedness in the Code covers not only actual impropriety, but the appearance of impropriety as well."); *In re Codesco, Inc.,* 18 B.R. 997, 999 (Bankr.S.D.N.Y.1982) ("a 'disinterested' person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.").

■ A court may deny compensation for services and reimbursement of expenses if the court finds that a professional person is not disinterested or represents or holds an interest adverse to the estate with respect to the matter on which such professional person is employed. 11 U.S.C.A. § 328(c) (West 1979). *See In re Roberts,* 46 B.R. 815 (Bankr.D.Utah 1985), *modified,* 75 B.R.

---

**3.** "A 'conflict of interests,' as usually applied to an attorney, refers to the representation by a given attorney or law firm of two or more entities holding or claiming adverse interests or of an entity holding an interest adverse to that of its attorney, its attorney's firm or the firm's associates." *In re Roberts,* 46 B.R. 815, 827 (Bankr.D.Utah 1985), *modified,* 75 B.R. 402 (D.Utah 1987).

**4.** "To 'hold an adverse interest' means for two or more entities (1) to possess or assert mutual-

ly exclusive claims to the same economic interest, thus creating either an actual or potential dispute between the rival claimants as to which, if any, of them the disputed right or title to the interest in question attaches under valid and applicable law; or (2) to possess a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities." *In re Roberts,* 46 B.R. 815, 826–27 (Bankr.D.Utah 1985), *modified,* 75 B.R. 402 (D.Utah 1987).

402 (D.Utah 1987), and the cases cited therein. It does not matter that no fraud or unfairness resulted from the professional's work. "Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation." *Woods v. City National Bank & Trust Co. of Chicago, Inc.*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941).

### B. The Trustee

The requirement that the trustee of a chapter 11 estate be a disinterested person is imposed by section 1104(c).[5] The definition of "disinterested person" found in section 101(13) is applicable to chapter 11 trustees, as well to professional persons. *In re Paolino*, 80 B.R. 341, 345 (Bankr.E.D.Pa.1987). *See also* 5 *Collier on Bankruptcy* § 1104.04[1] (L. King 15th ed. 1979). Therefore, the case law and analysis relating to professional persons can also be applied to chapter 11 trustees.

■ "Given the definition of 'disinterested' in section 101(13)(E), either a trustee or his or her counsel must be disqualified where it holds an interest adverse to the estate whether or not it acts to advance that interest." *In re Paolino*, 80 B.R. at 345. Similarly, a trustee who has been found to hold an interest adverse to the estate or to be not disinterested may be denied compensation for services and reimbursement of expenses. *Id.* at 344.

### IV. *The Disclosure Requirement*

It is for the court to decide whether the attorney's proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action [such as disqualification].... The question is not necessarily whether a conflict exists ... but whether a potential conflict, or the perception of one, renders the [professional's] interest materially adverse to the estate or the creditors.

*In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987). Therefore, "[i]t is incumbent upon the professional to disclose to the court any material fact which may relate to disinterestedness." 2 *Collier on Bankruptcy* § 327.03[3][a] (L. King 15th ed. 1979). *See also In re Diamond Lumber, Inc.*, 88 B.R. 773, 777 (N.D.Tex.1988).

■ Disclosure of information relating to a professional's disinterest must be made in the application to employ such person. These applications must conform to Bankruptcy Rule 2014(a):

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

Failure to adequately disclose information relating to a professional person's disinterestedness may result in a disallowance of fees for services and reimbursement of expenses. *In re Diamond Lumber, Inc.*, 88 B.R. 773, 777 (N.D.Tex.1988). *See also In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1256 n. 7 (5th Cir.1986); *In re Flying E Ranch Co.*, 81 B.R. 633, 637 (Bankr.D.Colo.1988); *In re Roberts*, 75 B.R. 402, 412 (D.Utah 1987).

In *In re Gray*, 64 B.R. 505 (Bankr.E.D. Mich.1986), an accounting firm's application for fees and expenses was denied be-

---

**5.** Section 1104(c) states in pertinent part:
   If the court orders the appointment of a trustee ... then the United States trustee, after consultation with parties in interest shall appoint, subject to the court's approval, one disinterested person other than the United States trustee to serve as trustee or examiner, as the case may be, in the case.

cause the firm's position as a pre-petition creditor of the estate was not disclosed in the application to be appointed accountants for the debtor. The court rejected the applicant's claim that the statements in the application for appointment and in the attached affidavit were materially correct because the accounting firm believed it could fairly and impartially perform its duties even though it had a pre-petition claim against the debtor. In doing so, the *Gray* court distinguished *In re Martin*, 59 B.R. 140 (Bankr.D.Me.1986), *aff'd*, 62 B.R. 943 (D.Me.1986), *vacated and remanded*, 817 F.2d 175 (1st Cir.1987).

In *Martin*, the debtors in possession applied to employ a law firm which had taken a promissory note in lieu of a retainer. The note was secured by a mortgage on real estate owned by the debtors. The firm's status as a secured creditor was disclosed in the debtor in possession's application to employ the law firm, but the firm's employment was approved by the Bankruptcy Court even though the firm obviously was not disinterested. *Id.* at 141–42. After a hearing on objections to the firm's fee application, the court concluded that the firm "should not have been employed as attorneys for the debtors in possession with the court's approval without divesting itself of its interest in the debtors' property." *Id.* at 144. However, the court did award fees and expenses for work performed by the firm that did not relate to the note and mortgage. The court's reasoning was essentially equitable:

> In this case it would be grossly unfair to Verrill & Dana to completely deny their application for compensation and reimbursement of expenses. The note and mortgage were revealed to the court at the commencement of the case as required by Section 328(a) and Rule 2014. Further, the propriety of such lien has never been decided in this District to the court's knowledge, and the court has been unable to find a reported case since the enactment of the Code applying sections 327(a), 101(13) and 1107(a) to similar facts.

*Id.* at 144.

The distinguishing factor between *In re Gray* and *In re Martin* was the difference in the disclosures made in each case. In *Martin*, the disclosure was complete and the law firm was appointed anyway. In *Gray*, not only was disclosure not made but:

> [T]he application by the debtor in possession, through his counsel, affirmatively stated that "to the best of [his] knowledge" the accounting firm "represented no interest adverse to the estate ..." and the firm's manager swore that it held "no interest adverse to the matters upon which [it was] to be engaged." Each document lacked any qualifying language acknowledging the existence of the pre-petition claim.

64 B.R. 505, 508 (Bankr.E.D.Mich.1986).

The *Gray* court noted, "Had the claim been disclosed in the application, the Court would have declined to authorize the firm's retention and, presumably, no post-petition services would have been rendered by it." *Id.* Accordingly, the court denied the fees sought by the accounting firm and set aside the order authorizing its employment. *Id.*

## V. *Discussion*

■ The facts in this case are essentially the same as those in *In re Gray*, 64 B.R. 505 (Bankr.E.D.Mich.1986). Although the trustee and the accountants for the trustee are not prepetition creditors of the estate, Bohl's work for Comerica does present a potential, if not an actual, conflict of interest. Comerica was a major creditor of Micro–Time. The amount of its debt was very strongly disputed and there had been an adverse relationship between the principal of the debtor (Kirkland) and Comerica. When the trustee was appointed, it was clear that a successful resolution of Micro–Time's dispute with Comerica would be a necessary prerequisite to any successful chapter 11 reorganization of Micro–Time. Any hint of any prior or ongoing relationship between Comerica and Bohl would create at least the appearance of impropriety. This is sufficient under the case law and section 101(13) to disqualify John C. Bohl, Jr. as trustee and Parker, Bohl & Associates as accountants for the trustee.

Like the accounting firm in *Gray,* Bohl did not disclose his potentially disqualifying relationship with Comerica in either the trustee's declaration of disinterest or in the affidavit he submitted when he applied for approval to appoint Parker, Bohl & Associates as accountants for the trustee. Instead, Bohl swore in his affidavit that "To the best of my knowledge neither our firm nor any member thereof ... holds any interest adverse to the matters upon which we are to be engaged. Neither I nor any member of my firm has any relationship or interest in the above named debtor or any other parties of interest therein." These statements were false; Bohl had an ongoing relationship with Comerica.

"The statutory requirements for the appointment of a professional to serve a bankruptcy fiduciary are well known, and if not, are certainly easy to find and understand." *In re Gray,* 64 B.R. 505, 508 (Bankr.E.D.Mich.1986). Bohl has a great deal of experience, both as a bankruptcy trustee and as an accountant for the trustee.[6] He should have known about the disclosure requirements even though he was not represented by an attorney when he made his declaration of disinterest and when he applied to employ Parker, Bohl & Associates.

The fact that he questioned Schafer about whether his work for Comerica presented a conflict of interest indicates that Bohl was concerned about the issue. As the court stated in *In re Gray,* "If the applicant had any doubt on the point it should have disclosed the claim and sought a ruling." *Id.* at 508. Instead, the Court, the U.S. Trustee, and any other interested party was denied the opportunity to make an informed evaluation of the applicants' qualifications. And, as the U.S. Trustee stated at the hearing on this matter, Bohl and Parker, Bohl & Associates may not have been appointed if the appropriate disclosures had been made.

The Court notes Bohl's assertion that the Court has substantial discretion as to the proper remedy in a case such as this. There is support for this argument:

[B]ecause a bankruptcy court is a court of equity ... the bankruptcy judge should not be bound by a completely inflexible rule mandating denial of all fees in all cases. The general rule should be that all fees are denied when a conflict is present, but the court should have the ability to deviate from that rule in those cases where the need for attorney discipline is outweighed by the equities of the case. This flexibility is supported by 11 U.S.C. 328(c), which says that the court "may" (rather than "shall") deny compensation when counsel represents an interest adverse to the interest of the estate.

*In re Roberts,* 75 B.R. 402, 412 (D.Utah 1987) (quoting *In re Watson Seafood & Poultry Co., Inc.,* 40 B.R. 436, 439–40 (Bankr.E.D.N.C.1984) (citations omitted)).

In addition, the Court is aware that the trustee and the accountants for the trustee performed substantial services for the estate and that the estate did receive some benefit from them.

However, "the denial of compensation [in such circumstances] is prophylactic. It constitutes a deterrent." *In re Roberts,* 46 B.R. at 847. This Court agrees that " 'the argument that possible harm ... could be counter-balanced by greater benefit [to the estate], ... does not cover the ... policy considerations which look to the harm to representation, the loss of confidence, etc.' " *Id.* (footnotes and citations omitted). Moreover, " '[i]t is almost impossible for a court to determine what benefit has accrued to the estate as opposed to what detriment might have accrued ... absent a conflict of interests....' " *Id.* (footnotes and citations omitted).

Therefore, this Court holds that John C. Bohl, Jr. and Parker, Bohl & Associates were not qualified to be appointed trustee and accountants for the trustee, respectively, and that they would not have been so appointed if they had properly disclosed Bohl's relationship to Comerica. There-

---

**6.** Bohl attached an extensive list of bankruptcy cases in which he had been involved to the applications for fees and expenses submitted by the trustee and the accountants for the trustee.

fore, the orders approving their employment should be vacated. The Court further holds that because Bohl and Parker, Bohl & Associates were not disinterested and because they disregarded the disclosure requirements, their applications for fees and expenses should be denied.

Accordingly, it is hereby ordered that the orders appointing John C. Bohl, Jr. as trustee and approving the employment of Parker, Bohl & Associates as accountants for the trustee are vacated, and the U.S. Trustee shall appoint a new trustee forthwith. It is also ordered that the fee applications submitted by John C. Bohl, Jr. and Parker, Bohl & Associates are denied.