**In re TINLEY PLAZA ASSOCIATES, L.P., Debtor.**

**Bankruptcy No. 92 B 2120.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 5, 1992.

Jack Hassid of Olshan, Grundman, Frome & Rosenzweig, New York City, for debtor.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

The matter before the court is the amended application of the Debtor, Tinley Plaza Associates, L.P. ("Debtor"), to employ Jack Hassid and his law firm, Olshan, Grundman, Frome & Rosenzweig (collectively "Olshan"), as counsel for the debtor-in-possession. The Debtor additionally requests that Mr. Hassid and his firm be employed nunc pro tunc to November 1, 1991. For the reasons set forth below, the court, after considering the pleadings, memoranda, affidavits, exhibits and other evidence in the record, denies the Debtor's application and its request to employ Mr. Hassid and the Olshan firm.

**1.** The case was commenced in response to the commencement of foreclosure proceedings by the Debtor's first mortgagee on October 30, 1991 in the Circuit Court of Cook County, Illinois.

**2.** Title to the real property of the Debtor is held by an Illinois land trust at the American National Bank & Trust Company of Chicago known as Trust No. 63308 and dated January 11, 1985.

## FACTS AND BACKGROUND

On November 1, 1991, the Debtor commenced these proceedings in the bankruptcy court for the Southern District of New York by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.[1] The case was originally assigned to Judge Garrity in New York, but was transferred to this court on January 28, 1992 when Judge Garrity granted first mortgagee, Mutual of New York's ("MONY"), motion to change venue.

The Debtor, a Delaware limited partnership, is the beneficial owner of a strip shopping center south of Chicago in the Tinley Park community.[2] The Debtor has continued in possession of its assets and in management of the center as debtor-in-possession under the Bankruptcy Code.[3] Tinley Park Plaza, S.G.P., Inc. ("TPP"), a Delaware corporation formed on March 20, 1991, is the Debtor's general partner. (March 30—April 1, 1992 Hearing on MONY's Motion to Modify the Automatic Stay, Movant's Ex. 22). TPP became the Debtor's general partner pursuant to a withdrawal agreement dated February 28, 1991, between the Debtor's former general partner, National Property Analysts, Inc., and Parfund Partners, Ltd. ("Parfund") that signed the agreement as the designee of TPP while TPP was still in formation. (March 30—April 1, 1992 Hearing, Movant's Ex. 21). TPP is by admission an impecunious corporation, its only asset being a one percent interest in the Debtor limited partnership which is insolvent. (March 31, 1992 Testimony of Herbert Lande; Debtor's Amended Statement of Financial Affairs).

TPP's relationship with Parfund is unclear.[4] Jeffrey S. Rich ("Rich") is senior

**3.** The word "Debtor" will also include debtor-in-possession and unless otherwise noted all references are to the Bankruptcy Code 11 U.S.C. §§ 101 et. seq. (1982 & Supp.1991).

**4.** Though the relationship between Parfund and the Debtor is more relevant to whether a trustee should be appointed in this case, what is known deserves comment as background for the matter presently before the court. What is known of

vice-president of Parfund and Herbert Lande ("Lande") is it's President and Managing Director. Both Lande and Rich are also involved with TPP. Lande is TPP's president and Rich is its owner.[5] In addition, TPP shares the same address as Parfund.[6] Upon confirmation of a plan of reorganization or sale of the Debtor's shopping center, Parfund will claim some form of compensation.[7]

The Amended Application of the Debtor to employ counsel ("Amended Application") filed April 24, 1992 is supported by the affidavit of Olshan attorneys Jack Hassid ("Hassid") and Michael Zukerman ("Zukerman"). The Original Application to employ counsel ("Original Application"), supported by the affidavit of Olshan attorney William S. Kaye ("Kaye"), was supplied to the United States Trustee's office in New York on or about November 4, 1991. (Amended Application, ¶ 10). As is the custom in New York, motions for the employment of counsel are supplied to the United States Trustee and if they have no objection, that fact is noted on the face of the order and all documents are delivered to the Bankruptcy Judge to whom the case is assigned. (Amended Application, Ex. C). The Judge apparently then enters an order approving or denying the application. This Court presumes that the United States Trustee and the Judge rely on the affidavits of proposed counsel and the debtor in determining whether to approve the proposed employment. There is no indication that any other party is served, nor for that matter in this case is there any indication that any other party was then of record.

The Original Application was misplaced by the U.S. Trustee's office. A second copy was provided on or about December 27, 1991. (Amended Application, ¶ 10).

The United States Trustee had no objection to the Original Application but the case was transferred to the Northern District of Illinois before the United States Trustee forwarded the application to Judge Garrity. (Amended Application, Ex. C). As a result, no order allowing the Debtor's application to employ counsel was ever entered.

The affidavit of William S. Kaye in support of the Original Application bears the date of November 4, 1991 and states in part:

3. To the best of my knowledge, information and belief, neither OGF & R [Olshan] nor I have any present or past connection with any of the creditors or any other party in interest herein or their respective attorneys, other than having had matters in the past or current pending matters, wherein one or more of the various attorneys for creditors may be involved as counsel for a Committee or as attorney or attorneys for a debtor (where OGF & R [Olshan] or I represent a Committee or a Trustee).

It is difficult to ascertain from this paragraph exactly what Mr. Kaye is stating. He and his firm apparently work on a great many debtor-creditor matters. Paragraph four however says "... neither OGF & R [Olshan] nor I represent any adverse interest to Tinley Plaza Associates, L.P., a limited partnership, as Debtor-in-Possession ... or its estate in the matters upon which I am to be engaged."

Neither the Original Application to employ Olshan under a general retainer nor Kaye's affidavit disclose that the Debtor paid $30,000 to Olshan on October 31, 1991, the eve of the commencement of this case. The $30,000 is listed in the Debtor's schedules and according to testimony before this court, it represents a retainer. (Testimony

the relationship between Parfund and TPP is gleaned from the March 31, 1992 testimony of Herbert Lande at the hearing on MONY's motion to lift the automatic stay.

5. Rich signed the affidavit affixed to the Debtor's application for employment of counsel as senior vice-president of TPP. The court questions this designation given Lande's testimony that Rich is a senior vice-president of Parfund and the owner of TPP.

6. TPP's letterhead lists the corporation's address as c/o Parfund Partners, Ltd., 23 East 22nd St. New York, NY 10010. (March 30—April 1, 1992 Hearing, Movant's Ex. 42).

7. The exact terms of Parfund's compensation is unclear from Lande's testimony and the exhibits admitted at the hearing on MONY's motion to lift the stay.

of Herbert Lande, March 31, 1992). The Amended Application to employ counsel for the Debtor currently before the court was filed on April 24, 1992. Again, neither the application nor the affidavit of Olshan attorney Jack Hassid disclose the $30,000 payment.

In addition, on March 31, 1992, it was disclosed that Michael Zukerman ("Zukerman"), the president of First Partners Credit Corporation ("First Partners"), a mortgage banking corporation that is to provide or may now be providing services to the Debtor, is also "of counsel" to the Olshan firm. (Testimony of Herbert Lande, March 31, 1992).[8] According to the Amended Application and Hassid's supporting affidavit, First Partners "is providing mortgage brokerage services to the Debtor" but it has not been paid since the commencement of the Debtor's Chapter 11 case. Prior to the commencement of this case, on April 10, 1991, First Partners was paid $1,594.75 for financial services provided to the Debtor. (Affidavit of Jack Hassid, ¶ 5).

According to Zukerman's May 7, 1992 affidavit, he is "of counsel" to the Olshan firm and entitled to share in the legal fees generated by Olshan's representation of the Debtor.[9] This fee arrangement with Olshan arises out of his referral of the Debtor's bankruptcy matter to that firm. He is to receive twenty percent of all fees received by Olshan on matters he refers to the firm (including the Debtor's bankruptcy) and eighty percent of the dollar amount of his own time charges. With regard to First Partners, Zukerman's original fee arrangement called for him to receive fifty percent of the consideration paid to First Partners for its services to the Debtor including an equity interest in the Debtor. (Affidavit of Jack Hassid, ¶ 5). However,

after this court expressed reservations regarding Zukerman's disinterestedness under this arrangement, he waived all right to compensation from First Partners for its services to the Debtor. (Affidavit of Michael Zukerman, ¶ 7).

The relationship between Zukerman, Olshan, First Partners and the Debtor was not disclosed in the First Application to employ Olshan. In the Memorandum in support of the Amended Application, Mr. Hassid explains that there was no disclosure of this relationship because it did not arise until January 28, 1992 when First Partners was retained by Parfund. However, it is disclosed in Mr. Hassid's affidavit that there was a relationship between the Debtor and First Partners prior to the commencement of this case as evidenced by the payment by the Debtor of $1,594.75 to First Partners on April 4, 1991. Furthermore, Mr. Lande testified on March 31, 1992 that there was an ongoing relationship between First Partners and Parfund, an entity closely related to the Debtor.

## DISCUSSION

### I. CONFLICTS OF INTEREST

The substantive requirements for employment of attorneys by trustees is governed by § 327(a). It provides that:

> ... the trustee, with the court's approval, may employ one or more attorneys, ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title. 11 U.S.C. § 327(a).

For the purposes of § 327(a), "trustee" is synonymous with "debtor-in-possession" as § 1107(a) confers most of the rights and responsibilities of a trustee upon a debtor-

---

8. The First Partners–Debtor–Zukerman relationship which Mr. Hassid says arose January 28, 1992 was discovered by this court March 31, 1992 during the testimony of Herbert Lande at a hearing on MONY's motion to lift the automatic stay. The relationship was then disclosed on April 24, 1992 in the Debtor's Amended Application to employ counsel.

9. This court had originally planned to enter an order requesting additional affidavits regarding Mr. Zukerman's relationship to the parties involved. However, the confusion regarding at what time Mr. Zukerman became "of counsel" to the Olshan firm was cleared up at the status hearing held on May 27, 1992 when the court was informed by Mr. Hassid that Mr. Zukerman was "of counsel" at the time he referred the Debtor to the Olshan firm.

in-possession. *In re Al Gelato Continental Desserts, Inc.*, 99 B.R. 404, 406 (Bankr. N.D.Ill.1989); *In re Met–L–Wood Corp.*, 115 B.R. 133, 135 (N.D.Ill.1990). No one may provide professional services to an estate unless they satisfy the two basic requirements of § 327(a). First, an attorney the debtor-in-possession seeks to employ cannot hold or represent an interest adverse to the estate. Second, the attorney must be a disinterested person as defined by § 101(14). If an attorney who is a member of a law firm is disqualified from employment by the debtor-in-possession because he or she does not meet either of these criteria, then all the members of the attorney's law firm are also disqualified. *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 338 n. 11 (E.D.Pa.1982); *In re Paolino*, 80 B.R. 341, 345 (Bankr.E.D.Pa. 1987); *See* Rule of Professional Conduct for the Northern District of Illinois, Rule 1.10(a).

What constitutes "holding an adverse interest" is not defined in the Bankruptcy Code. However, case law has interpreted the term to mean:

1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

2) to possess a predisposition under circumstances that render such a bias against the estate. *In re Diamond Mortg. Corp.*, 135 B.R. 78, 94 (Bankr. N.D.Ill.1990); *In re Roberts*, 46 B.R. 815, 827 (Bankr.D.Utah 1985) *aff'd in relevant part and rev'd in part*, 75 B.R. 402 (D.Utah 1987).

If an attorney either falls within this definition, or represents someone who falls within this definition then court approval of the debtor-in-possessions's application must be denied. 11 U.S.C. § 327(a).

Unlike "holding an adverse interest," "disinterested person" is a term defined by the Bankruptcy Code. Section 101(14)(A)–(D) defines specific types of relationships which render a person not disinterested.[10] In addition, § 101(14)(E) of the definition is a catch-all provision that overlaps with § 327(a)'s requirement that counsel for a debtor-in-possession not hold an interest adverse to the estate. Section 101(14)(E) provides in relevant part that a "disinterested person" is one that *"does not have an interest materially adverse to the interest of the estate* ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason."* 11 U.S.C. § 101(14) (emphasis added).

■ The purpose of § 327(a) is to ensure that attorneys employed by the estate have no conflicts of interest with the estate. The strict requirements of § 327(a) are a direct reaction to the feeling in Congress at the time the 1978 Bankruptcy Code was passed that the previous bankruptcy system worked more in favor of attorneys than anyone else. *In re EWC, Inc.*, 138 B.R. 276, 279 (Bankr.W.D.Okl.1992). Section 327(a) is strictly enforced because it impacts the integrity of the bankruptcy system as a whole. *In re Michigan General Corp.*, 78 B.R. 479, 484 (Bankr.N.D.Tex. 1987). Any attorney a debtor-in-possession wishes to hire should be "... free of the slightest personal interest which might be reflected in their decisions concerning mat-

10. (14) "disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

ters of the debtor's estate." *In re Kuyk-endahl Place Assoc., Ltd.,* 112 B.R. 847, 850 (Bankr.S.D.Tex.1989).

■ The requirements of § 327(a) are even more stringent than those under the Rules of Professional Conduct for the Northern District of Illinois. Under the Rule 1.7 of the Rules of Professional Conduct, an attorney can represent a client with whom he or she has a conflict of interest if the attorney reasonably believes the representation will not be adversely affected and the client consents after disclosure. Section 327(a) is a prohibition without exception. *Diamond Mortg.* at 90.

## II. DISCLOSURE UNDER BANKRUPT-CY RULE 2014(a)

■ While § 327(a) delineates the substantive standards for employment of counsel, Federal Rule of Bankruptcy Procedure 2014(a) ("Rule 2014(a)") sets up what attorneys must disclose before the court can determine whether they pass the requirements of § 327(a). Rule 2014(a) places the burden of disclosure on the attorneys the estate seeks to employ. *In re EWC* at 280. This makes sense because the attorneys, not the court, has access to the information needed to determine compliance with § 327. Furthermore, the duty to disclose continues beyond the initial stage of application to employ counsel. *Diamond Mortg.* at 90. If a conflict arises after attorneys are employed by the debtor-in-possession, such conflict must be disclosed to the court and the court must immediately disqualify the attorney. *In re EWC* at 282.

■ Pursuant to Rule 2014(a) [11] an application to employ counsel must disclose all compensation arrangements and the connections the attorney has with the debtor,

creditors, and other parties in interest. The connections that are important to disclose under Rule 2014(a) are those "... that presently exist or recently existed between the attorney and the parties in interest...." *In re Rusty Jones,* 134 B.R. 321, 345 (Bankr.N.D.Ill.1991). The purpose of the extensive disclosure of Rule 2014(a) is to prevent the employment of attorneys for the estate who might be predisposed in favor of one of the interested parties. *Rusty Jones* at 345–46.

■ The requirements of Rule 2014(a) are not discretionary. An attorney's interest in being employed by the estate could cloud the attorney's judgment regarding what should be disclosed. *Rusty Jones* at 345; *In re Lee,* 94 B.R. 172, 176 (Bankr. C.D.Cal.1988). What facts are relevant to the court's § 327(a) determination is for the court to decide and not the attorneys who wish to be employed as counsel for the debtor-in-possession. *Rusty Jones* at 345; *In re EWC* at 280. As a result, courts require applications to employ counsel to strictly comply with Rule 2014(a).

## III. FAILURE TO DISCLOSE AND VIOLATION OF § 327(a)

■ Failure to meet the requirements of Rule 2014(a) is enough by itself to disqualify an attorney and deny compensation even if no conflict of interest exists. *In re EWC* at 280; *Rusty Jones* at 341. In addition, if an attorney does not disclose a conflict arising after employment has been allowed, the court must set aside the employment and disgorge any compensation granted during the period the conflict existed. The court has "no duty to rummage through files or conduct independent fact-finding investigations in order to determine whether prospective attorneys are involved

---

**11.** Bankruptcy Rule 2014(a) states in relevant part:
... The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective

attorneys and accountants, the United States trustee or any person employed in the office of the United States trustee. The application *shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.* (emphasis added).

in actual or potential conflicts of interest." *In re Rusty Jones*, 134 B.R. 321, 345 (Bankr.N.D.Ill.1991). Without strict enforcement of Rule 2014(a), the burden of fact finding would shift to the court, wasting judicial resources that are better utilized elsewhere. Furthermore, strict compliance with Rule 2014(a) is necessary to the effective enforcement of § 327(a) as this provision goes to the very heart of the bankruptcy system's integrity. *In re EWC* at 280.

■■■ The remedies for violation of § 327(a) are similar to those for Rule 2014(a) violations. If the court determines that an attorney does not meet the requirements of § 327(a), the debtor-in-possession's application to employ the attorney must be denied. If the violation occurs while the attorney is already employed by the estate, then the court must deny compensation for the period that the conflict existed. *In re EWC* at 281. Finally, the court has the discretionary authority pursuant to § 328(c) to deny compensation for any part of an attorney's services performed outside the conflict. *In re EWC* at 282.

## IV. ANALYSIS

■■■ Of primary importance to the § 327(a) analysis in this case is the relationship of Zukerman to the Olshan firm and Zukerman to First Partners. Zukerman is "of counsel" to the Olshan firm. What "of counsel" means depends on the facts of each and every case because unlike a "partner" or an "associate," the relationship between a law firm and an attorney who is "of counsel" depends on the agreement between the two. The particular relationship between the Olshan firm and Zukerman is set forth in Zukerman's May 7, 1992 affidavit which states he receives twenty

percent of all fees generated on matters he introduces to the Olshan firm (including the Debtor's bankruptcy) and eighty percent of the fees generated by his own time charges. However, regardless of how "of counsel" is defined, an attorney, like Zukerman, who is "of counsel" to a law firm is a member of that firm and shares in certain of the responsibilities of the firm particularly with regard to conflicts. Therefore, if Zukerman is disqualified due to a conflict of interest under § 327(a), then the entire Olshan firm is disqualified from representing the Debtor.[12]

■■■ Zukerman is also the president of First Partners, the mortgage banking firm retained by Parfund to obtain new investment capital for the Debtor. According to the Amended Application, Zukerman and the Olshan firm are disinterested for the purposes of § 327(a) because Zukerman has waived any right to the fees that First Partners expects to receive upon confirmation of a plan of reorganization. However, this does not change the fact that Zukerman remains the president of First Partners. As its president, Zukerman owes First Partners a duty to act in the corporation's best interest. If Olshan is employed as the Debtor's counsel, the members of the firm, including Zukerman, will owe a fiduciary duty to the debtor-in-possession. However, neither Zukerman nor the applicant explain how Zukerman and for that matter, Olshan can serve two masters.

■■■ It is conceivable that in his role as president of First Partners, Zukerman may be placed in the position of owing a duty to First Partners to promote an investment deal that would be in the best interest of First Partners but not be in the best interest of the Debtor. As soon as counsel are employed, an attorney owes his alliance and a fiduciary duty to the debtor-in-pos-

---

**12.** This result is in accord with *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 338 n. 11 (E.D.Pa.1982); *In re Paolino*, 80 B.R. 341, 345 (Bankr.E.D.Pa.1987) previously cited and the Comment to Rule 1.10 of the Rules of Professional Conduct for the Northern District of Illinois. Rule 1.10 states in relevant part:

(a) No lawyer *associated* with a firm shall represent a client when the lawyer knows or

reasonably should know that another lawyer *associated* with that firm would be prohibited from doing so by Rules 1.7 [Conflict of Interest: General Rule] ... (emphasis added).

The Comment to Rule 1.10 defines "associated" "to cover all forms of association between the lawyer and the firm, including but not restricted to ... of counsel."

session and no other person connected with that entity. *In re Grabill Corp.*, 113 B.R. 966, 970 (Bankr.N.D.Ill.1990). If the Olshan firm were employed by the estate it and its members, including Zukerman, would owe a fiduciary duty to obtain the best possible financing for the Debtor which would conflict with Zukerman's duty to First Partners.

Zukerman's role as First Partners' president and a member of the Olshan firm constitutes an actual conflict of interest in violation of § 327(a). As previously discussed, the requirements of § 327(a) are strictly enforced as a means of preserving the integrity of the bankruptcy system. Therefore, Olshan is disqualified from representing the Debtor because Zukerman's duty to First Partners constitutes an interest materially adverse to the Debtor's interests.

■ Bankruptcy Rule 2014(a) provides an alternate ground for denying the Debtor's Amended Application. Neither the Original Application filed by Kaye nor the Amended Application disclose that the Olshan firm was paid $30,000 on October 31, 1991, the day before the Debtor commenced this case. Both applications simply request that the Olshan firm be employed pursuant to a general retainer arrangement. The $30,000 payment to Olshan and the fact that it was meant to be a retainer was discovered by this court upon investigation of the Debtor's schedules and hearing the testimony of Herbert Lande taken on March 30, 1992 in conjunction with MONY's motion to lift the stay. The lack of any reference to the $30,000 retainer payment made to Olshan on October 31, 1991 violates Bankruptcy Rule 2014(a) which requires that all compensation arrangements be disclosed in the application to employ counsel.

### CONCLUSION

Both § 327(a) and Bankruptcy Rule 2014(a) require strict enforcement to preserve the integrity of the bankruptcy system. Zukerman's role as president of First Partners constitutes an adverse interest to the estate that would conflict with his role

as a member of the Olshan firm if the court were to approve the Debtor's application to employ Mr. Hassid and the Olshan firm. In addition, because the $30,000 retainer payment to the Olshan firm was not disclosed in either application, Bankruptcy Rule 2014(a) was violated. Both of these violations disqualify Hassid and Olshan from representing the Debtor's estate. Therefore, for the reasons stated above, the Debtor's Amended Application to employ Mr. Hassid and the Olshan firm is denied.